## WELLS *vs.* KELSEY.

Although courts have received evidence of the price paid for the identical property or article in suit, as some evidence of its value, yet when a large number of articles are sold in the aggregate for a given sum, the opinion of witnesses as to the value of a part of the articles, will not be received for the purpose of ascertaining the value of the other part, in an action for the conversion of the latter.

APPEAL by the defendant from a judgment at the circuit in favor of the plaintiff for $923.90 damages and costs, and from a subsequent order made at a special term, denying a motion for a new trial.

*Britton & Ely,* for the appellant,

*Charles Crary,* for the respondent.

Wells *v.* Kelsey.          .

*By the Court*, Brown, J.   The plaintiff claims to be the owner, by purchase from the firm of E. R. Durkee & Co., of two iron boilers, one iron boiler front, certain bolts, anchors, iron bars, a quantity of fire and a quantity of hard brick, and the action is brought to recover the value thereof, upon the ground that the defendant had converted the property to his own use.   It was in a building upon Sedgwick street in the city of Brooklyn, of which the plaintiff's vendors were the tenants, and Charles Kelsey, the defendant, the landlord. The term had ended, in pursuance of a stipulation in the lease, by which the destruction of the demised building by fire should have that effect.   In the case of *Kelsey* v, *Durkee*, (33 *Barb.* 410,) this court, at general term, adjudged that the articles referred to were not fixtures, and were the property of the tenants, and not that of the landlord.   The material questions which arose upon the trial of this action, at the Kings county circuit, in October, 1861, when the plaintiff had a verdict, were as to the conversion by the defendant, and as to the value of the property,

In regard to the conversion, the plaintiff, who was examined as a witness, testified that he bought the property from E. R. Durkee & Co. on the 1st of October, 1860, and commenced to move it on the 2d of that month.   "I moved the engine and some other machinery connected with it.   I then commenced to take down the brick work and part connected with the boilers, and to remove the boilers, and while doing it Mr. Kelsey came in and forbid my doing so.   He said they were built in brick work and connected with the building, consequently they were his property.   He also said there was an injunction against the removal of them, and if I moved them, it would be at my peril.   I then gave directions to the men I had employed to leave them ; that we might get ourselves into difficulty.   I commenced to move on the 2d, and this might be on the 4th.   He said these boilers and brick work and all there, that were connected with and built into the brick work, were his.   I told him I had bought them, and

had a right to remove them.   He said if I did so I would make myself liable to prosecution, or something to that effect.   He acted rather excited.   I went off and left the property."

This evidence was to some extent contradicted by the testimony of Charles Kelsey, the defendant, and of his agent, Stephen Halstead.   But there was no conflict as to the presence and interference of Kelsey, at the time referred to by Wells, and that he opposed and forbade the removal of some portion of the property purchased by Wells from E. R. Durkee & Co.   There was also evidence from which the jury might have inferred and found the subsequent assent of Kelsey to the removal of the property.   The question, however, was fairly left to the jury.   They were told by the judge that "a demand and refusal is evidence of a conversion, and nothing more.   If the refusal is qualified in any way, the jury must judge whether the qualification, or the reason given for not delivering the property, is a reasonable one.   If it is reasonable, then the conversion is not made out, and the action must fail.   If Charles Kelsey refused to deliver the property on demand, and afterwards signified to the plaintiff his willingness that he might take it away, before the commencement of the action, then the conversion is not made out."   The jury found the fact of the conversion, against the defendant, and their verdict cannot be disturbed.

Upon the subject of the value of the property, a question of evidence occurred, which I will briefly examine.   The bill of sale from E. R. Durkee & Co. to Thomas I. Wells, the plaintiff, read in evidence, included a steam engine and various other articles of machinery and tools, besides the property to recover the value of which this action is brought.   The price for the whole property was the sum of $1200, without designating the price of each article separately.   Upon the cross-examination of Thomas I. Wells, the defendant's counsel asked him "what the steam engine was worth?"   The question was objected to as immaterial and irrelevant.   The court sustained the objection and excluded the evidence, and

the defendant excepted. The steam engine was not the subject of the action. The defendant's counsel then asked the witness the following question : " What was the value of the articles purchased by you not included in this action ?" This question was in like manner objected to, the objection sustained and the defendant excepted. The object of these two questions was to fix the value of the property which was the subject of the action. Assuming the value of the various articles named in the bill to be $1200, the price therein named, and deducting these from the estimated value of the articles not included in the complaint, would fix, it is thought, necessarily the value of the property claimed by the plaintiff. It was evidence, it is said, from which the jury might infer the value of the property in suit. The courts have received evidence of the price paid for the identical property or article in suit, as some evidence of its value. But when a large number of articles are sold in the aggregate, for a given sum, they have never received, that I can learn, the opinion of witnesses as to the value of a part of the articles, for the purpose of ascertaining the value of the other part. Such a mode of estimating value of property, is open to many objections. It must assume that the price paid for the aggregate property is the true value. It is very far from being so regarded. In *Smith* v. *Griffith* (3 *Hill*, 333) the court say : " though the price paid by the plaintiff was not conclusive upon him, as he might have been fortunate enough to buy under the fair market value, yet it is some evidence, and might well have been taken into the account, with the other testimony. It was one of the multitude of sales that in the aggregate might go to determine the market value, at the place where the purchase was made." This was said, it must be observed, of an article having a market value, which second hand steam engines, boilers, pumps, shafting, pulleys, pipes, cocks, tools and machinery have not. In *Campbell* v. *Woodworth* (20 *N. Y. Rep.* 499) evidence of the sum for which the identical goods in suit were sold at auction was offered and rejected,

and in the opinion Judge Denio says : " In such a case as the present, we think that the evidence of what the goods sold for at the auction should have been received for the consideration of the jury, to be compared with the other evidence of value that might be offered, and to be allowed such weight as the circumstances of the sale, and the degree of competition actually exhibited, should entitle it to." All this has reference to the specific property itself, and not to some other property with which it happens to be united and valued, and from which it must finally be separated. The proposition of the defendant was to separate this mass of machinery and tools into two separate parts, and take the opinion of his witness upon that part which was not the subject of the action, for the sole purpose of getting at the value of the part in controversy. And if the inquiry was legitimate and proper to the extent proposed, it would have been equally legitimate and proper to take the opinion of witnesses upon the value of each separate article. No thought is given to the effect which separation might have upon the actual value of the property. It may have been of greater value when sold together than when sold in separate parcels, and it may have been worth less. And it is very evident, from these considerations, that the opinion of the witness upon the value of the property sold by E. R. Durkee & Co. to the plaintiff, and not the subject of the suit, could be of no service to the jury in determining the value of that which was. It might confuse their minds and lead them away from the real question submitted to them, but it could do nothing else.

The judgment should be affirmed.

[ORANGE GENERAL TERM, September 8, 1862. *Emott, Brown, Scrugham* and *Lott,* Justices.]